UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| WENLONG KUANG,<br>Petitioner,<br>v.<br>JAMES JANEC[K]A, Warden of the Adelanto ICE Processing Center, et al.,<br>Respondents. | Case No. 5:26-cv-04365-DTB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

**I.**

**PROCEEDINGS**

On August 4, 2026, petitioner Wenlong Kuang ("Petitioner"), through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (Docket No. 1), accompanied by the supporting Affidavit of Petitioner ("Petitioner's Decl.") (Docket No. 1-2) and one supporting exhibit (Docket No. 1-1).

/ / /

/ / /

/ / /

The Petition alleges the following claims for habeas relief: (1) Petitioner's detention violates his right to procedural due process under the Fifth Amendment; and (2) Petitioner's detention violates his right to substantive due process under the Fifth Amendment. (Docket No. 1 at 9-10).[1]

On August 11, 2026 (pursuant to General Order 26-05's expedited briefing schedule, see Docket No. 5 at 2, 5), Respondents filed an Answer to the Petition ("Answer") (Docket No. 10), accompanied by one exhibit (Docket No. 10-1 at 3-5). In their Answer, Respondents state that Petitioner appears to be entitled to a bond hearing pursuant to Rodriguez Vasquez v. Bostock, -- F.4th --, 2026 WL 2196424 (9th Cir. 2026), but do not otherwise address the claims raised in the Petition. (See Docket No. 10 at 2-3).

On August 20, 2026, Petitioner filed a Reply. (Docket No. 11).

Thus, this matter is now ready for decision. For the reasons set forth below, the Court grants the Petition.

## II.

## BACKGROUND[2]

Petitioner is a native and citizen of the People's Republic of China who fled because he suffered persecution. (Petition at ¶¶ 1, 19). On March 13, 2024, Petitioner entered the United States lawfully in Los Angeles, California, on a valid B-1/B-2 nonimmigrant visa, after inspection and admission by an immigration officer. (Id. at ¶ 20).

In or around November 2024, Petitioner filed an application for asylum based on the past persecution he suffered in China. (Petition at ¶¶ 1, 21; Petitioner's Decl. at ¶ 3).

---

[1] For the parties' pleadings, the Court cites to the CM/ECF pagination at the top of each page.

[2] The Background is based on the allegations in the Petition.

Consistent with his pending application, United States Citizenship and Immigration Services ("USCIS") granted Petitioner employment authorization, and he obtained a Social Security number. (Petition at ¶¶ 1, 22; Petitioner's Decl. at ¶ 4). Since then, Petitioner has lived openly at a known address, worked lawfully, built and personally operated his own business, established deep community ties, and has no criminal history. (Id.).

On July 31, 2026, Petitioner went to Los Angeles International Airport ("LAX") to board a domestic flight to Houston, Texas. (Petition at ¶¶ 2, 24; Petitioner's Decl. at ¶ 5). Petitioner did not depart the United States, did not travel internationally, and did not present at any border or port of entry seeking admission. (Id.). He was, at all times, a lawfully admitted noncitizen present within the United States. (Petition at ¶ 24).

At LAX, before Petitioner boarded his scheduled flight, Immigration and Customs Enforcement ("ICE") officers arrested him, without a judicial warrant, without any prior notice, and without a hearing. (Id. at ¶¶ 2, 25; Petitioner's Decl. at ¶ 7).

Because Petitioner's intended travel was purely domestic and he never left the country, he contends that he is not an "arriving alien" or applicant for admission subject to 8 U.S.C. § 1225. (Petition at ¶¶ 3, 26). Petitioner is not subject to mandatory detention and his detention is discretionary under 8 U.S.C. § 1226(a). (Id.).

Petitioner has no criminal history and had never before been detained. (Id. at ¶ 27). Petitioner's confinement has taken a serious toll; he suffers from depression and sleeps poorly, and the business he built and personally manages has been left without the person who runs it. (Id.; Petitioner's Decl. at ¶ 9).

Petitioner's arrest was not warranted by any emergency, exigency, or risk of flight such that pre-deprivation notice would have been excused. (Petition at ¶ 28).

Petitioner had filed for asylum, obtained work authorization, has been issued a Social Security number, has operated a business at a fixed location, and has lived openly at a known address for more than two years. (Id.). Providing notice and a hearing before any arrest was entirely practicable and Respondents simply did not do it. (Id.).

Petitioner is being detained at the Adelanto Ice Processing Center in Adelanto, California. (Id. at ¶¶ 2, 11, 27; Petitioner's Decl. at ¶ 8; see https://locator.ice.gov/odls/#/results).

## III.

## LEGAL AUTHORITY

A writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A noncitizen in the custody of immigration authorities may bring a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the grounds of their detention violates the Constitution or other federal laws. 28 U.S.C. § 2241(c)(3); Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001) (federal courts retain jurisdiction to consider habeas relief under Section 2241 for noncitizens subject to detention following an order of removal).

Here, Petitioner has raised claims under the Due Process Clause of the Fifth Amendment. The Due Process Clause prohibits deprivations of life, liberty, and

property without due process of law. See U.S. Const., amend. V. These protections extend to noncitizens present in the United States. See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (*per curiam*) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)). Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ." Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).

Due process "is a flexible concept that varies with the particular situation." Zinermon v. Burch, 494 U.S. 113, 127 (1990). Indeed, the Due Process Clause provides both procedural and substantive protections. See e.g., Regino v. Staley, 133 F.4th 951, 959 (9th Cir. 2025) ("This clause protects individuals against two types of government action: violations of substantive due process and procedural due process." (internal quotation marks omitted)). To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)). Under Matthews, courts weigh the following three factors: (1) "[T]he private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the

additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").

## IV.

## DISCUSSION

### A. Petitioner is Entitled to Habeas Relief.

Petitioner claims that his arrest and detention on July 31, 2026, without any pre-deprivation notice or hearing, constituted a violation of due process. (See Petition at 6-10). Specifically, Petitioner alleges that he lawfully arrived in the United States in 2024 on a visa, and that he has since applied for asylum and thus has pursued lawful immigration status pursuant to the laws and instruction of the government. During the pendency of his asylum application, Petitioner has complied with all requirements of the process, and the government has permitted him to remain free and at liberty while exercising authority over his application for immigration relief. (Petition at ¶¶ 1, 21-23). Petitioner has applied for – and received – government authorization for employment, and has been issued a social security card. (Id. at ¶¶ 1, 22). He has lived openly at a known address, built and operated a business, established community ties, and has maintained a "spotless" criminal record. (Id.).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690. The protection afforded by the Due Process Clause runs to citizens and noncitizens alike. J. G. G., 604 U.S. at 673 (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)) (cleaned up) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal

proceedings."). Evaluating the contours of Petitioner's due process rights proceeds in two steps: "[T]he first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, No. 2:25-cv-01884- TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Ky. Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)).

Here, the Court finds that Petitioner has demonstrated a protected liberty interest in remaining at liberty in the community absent sufficient justification for his re-detention, based on the government's decision not to detain him or otherwise impede his liberty while exercising authority over him for purposes of adjudicating his application for immigration relief. Indeed, a number of federal courts in California have found a protectable liberty interest in nearly identical circumstances. See Tzoc v. LaRose, Case No. 26-cv-3965-GPC-VET, 2026 WL 2227161, at *2-3 (S.D. Cal. Aug. 3, 2026); Dai v. Janecha, Case No. 5:26-cv-03966-PD, 2026 WL 2164154, at *1-2 (C.D. Cal. July 24, 2026); E.E.O.H. v. Noem, Case No. 1:26-cv-01266-JLT-SAB-HC, 2026 WL 850363, at *4-5 (E.D. Cal. Mar. 26, 2026), report and recommendation adopted, 2026 WL 967670 (E.D. Cal. Apr. 9, 2026); Villanueva-Montanez v. Lyons, Case No. 2:26-cv-00954-DAD-CKD, 2026 WL 797930, at *1 (E.D. Cal. Mar. 23, 2026); Kalkan v. Chestnut, Case No. 1:26-cv-02028-DAD-EFB, 2026 WL 788112, at *1 (E.D. Cal. Mar. 20, 2026); Kharitonova v. Albarran, Case No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026).

As demonstrated in the cases cited above, courts have found a substantial liberty interest in circumstances where noncitizens commenced immigration proceedings, such as applying for asylum, and the government chose not to detain them. See also Gagik T. v. Chestnut, et al, Case No. 1:26-cv-04337-MWJS, 2026

WL 1837413 (E.D. Cal. June 25, 2026) (granting release to a noncitizen who entered the country on a visitor visa, applied for asylum, was granted employment authorization and remained out of custody for six years); Kharitonova, 2026 WL 531441 at *2 ("Although the Government did not detain and then release her, it made a decision *not* to detain her in the first place; Petitioner thus has the same liberty interest in her continued freedom as an individual who was initially detained.").

The Court finds the reasoning of these cases persuasive. Petitioner entered the United States lawfully, pursuant to a B-1/B-2 nonimmigrant visa, and thereafter proceeded through the established lawful process to apply to the government for asylum. (Petition at ¶¶ 1, 20-23). During the nearly two years that Petitioner has been present in the country, the government accepted his asylum application, granted him employment authorization and issued him a social security number. (Id. at ¶¶ 1, 21-22). Thus, Respondents have had full knowledge of Petitioner's identity, immigration status and location during the pendency of his immigration application, or since November 2024. With this knowledge, the government has continuously elected not to detain Petitioner while exercising authority over his legal proceedings, all the while permitting him to remain free and at liberty while his application was pending.

Considering the arc of the government's sustained conduct towards Petitioner, the Court finds that Petitioner developed a substantial liberty interest in continued release.

In light of this protected liberty interest, the Court turns to consider what process he is owed before the government may take that liberty interest away. Petitioner claims that due process was required before he was taken into custody. (Petition at ¶ 31). He thus argues that the appropriate habeas remedy is for him to be released back to the community. (Id. at 10). The Court agrees.

/ / /

To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three factors set forth in Mathews:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

As discussed below, the Court finds that each of the three Mathews factors supports Petitioner's constitutional right to process before he was re-detained.

With regard to the first factor, as discussed above, the liberty interest at stake here is significant. Petitioner has a substantial interest in remaining in the community and pursuing his application for immigration relief. See Ortega, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (holding that the petitioner had a substantial liberty interest where he had been released from custody for 18 months and was living with his wife, spending time with his mother and other family members, working as a bicycle mechanic, and developing friendships in his community).

Turning to the second Mathews factor, there is a significant risk that the government will erroneously deprive Petitioner of that liberty interest if it does not provide him with pre-deprivation process. The crux of due process "is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews, 424 U.S. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).And where a petitioner has not received a hearing or other process prior to the revocation of his liberty, "the risk of an erroneous deprivation [of liberty] is high." Singh v. Andrews, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025) (cleaned up).

Finally, Respondents have not articulated any countervailing government interest—the third Mathews factor—that supports providing this process only after Petitioner has been detained. Due process "usually" requires a hearing before the State deprives a person of liberty or property. Zinermon, 494 U.S. at, 127. Exceptions to that general rule are appropriate where quick action is necessary or where it is impractical to impossible to provide pre-deprivation process. Id. at 128. But neither of those exceptions appears to be applicable to the instant circumstances. Respondents have not argued that Petitioner was an imminent risk of flight or that some other exigency required his immediate arrest and detention arrived at LAX on July 31, 2026.

In short, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing [or other procedure] is low." Ortega, 415 F. Supp. 3d at 970; see also Morrissey v. Brewer, 408 U.S. 471, 483 (1972) (noting that "the State has an overwhelming interest in being able to return the individual to imprisonment without the burden of a new adversary criminal trial[,] . . . [y]et, the State has no interest in revoking parole without some informal procedural guarantees"). Because each of the Mathews factors favors Petitioner's bid for pre-deprivation process, the Court finds that Petitioner's detention—which was accompanied by no process—violates the Due Process Clause.

As for the appropriate remedy for the government's due process violation, many courts considering this issue have found that a post-detention bond hearing does not rectify the harm of a due process violation because the petitioner "will have already suffered the harm" that such petitions raise—her potentially erroneous detention. See e.g., Charan S. v. Warden, CA City, Case No. 1:26-cv-3017, TLN-JDP, 2026 WL 1144158, at *6 (E.D. Cal. Apr. 28, 2026) ("The fact that Petitioner was provided with a post-deprivation court-ordered bond hearing does not cure the

initial constitutional violation of unlawfully revoking Petitioner's liberty and detaining him without any process for nearly two months");; Saballos Rosales v. Noem, Case No. 5:26-CV-00112-JWH-MBK, 2026 WL 761371, at *3 (C.D. Cal. Mar. 16, 2026) (granting Temporary Restraining Order and finding that "the post-detention process [of a bond hearing] that Rosales did receive, and will receive, is no substitute for the pre-detention process she was owed.") (citing Hasratyan); Hasratyan v. Bondi, Case No. 5:26-cv-00210-MCS-ADS, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026) (concluding that where a petitioner received a procedurally deficient post-detention bond hearing, "the post-detention process Petitioner received and will receive is no substitute for the pre-detention process she was owed"); ; Domingo v. Kaiser, Case No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14 2025); see also Riveros-Sanchez v. City of Easton, 861 F. App'x 819, 822 (3d Cir. 2021) ("[I]f a pre-deprivation hearing was required, then no amount of post deprivation process could cure the . . . initial failure to provide a hearing.").

As with similar cases in this Circuit, the Court finds that the appropriate remedy in this case is to order Petitioner placed in the position he would have enjoyed absent the due process violation—that is, he should be released from detention. See, e.g., E.A.T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (granting such relief); Jasbir v. Warden, Case No. 26-cv-579-JES-BJW, 2026 WL 353354, at *4 (S.D. Cal. Feb. 9, 2026) (ordering release due to due process violation despite government's argument that the petitioner was only entitled to bond hearing as a Maldonado Bautista class member); Prior v. Chestnut, Case No. 1:25-cv-01131-JLTEPG-HC, 2026 WL 309560, at *9 (E.D. Cal. Feb. 5, 2026) (recommending immediate release as appropriate remedy for due process violation).

Accordingly, Petitioner's claim that his right to due process was violated by the lack of notice and hearing prior to his arrest and detention (Petition at 9-10) is

granted. The remaining claim in the Petition is denied as moot in light of the relief granted on this claim.

**V.**

**ORDER**

IT THEREFORE IS ORDERED that: (1) Judgment be entered granting the Petition; and (2) that a writ of habeas corpus be issued (a) requiring Respondents to immediately release Petitioner Wenlong Kuang (A# 235-215-673) from custody, subject to the same conditions (if any) that he was subject to at the time he was arrested and re-detained, (b) ordering Respondents to return all property confiscated from Petitioner during his arrest and processing into detention; (c) enjoining Respondents and their officers, agents, employees, attorneys and persons acting on their behalf in concert or in participation with them, from re-detaining Petitioner without notice and a pre-detention hearing before a neutral arbiter at which the government bears the burden of proving that Petitioner is a flight risk or danger to the community; and (d) ordering Respondents to file a status report within two (2) business days to confirm that Petitioner has been released from custody pursuant to this Order.

DATED: August 26, 2026

DAVID T. BRISTOW
UNITED STATES MAGISTRATE JUDGE